UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                  :

ARMOUTH INTERNATIONAL, INC.,     :

                              :

                   Plaintiff,   :

                              :

           v.                   :

                              :

MICHAEL FALLAS,               :

                   Defendant.  :

                              :

------------------------------------------------------ :
                               X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/1/2021

No. 19-CV-3669 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

      Plaintiff Armouth International, Inc. brings this action for common law fraud, unjust enrichment, and conversion against Defendant Michael Fallas, seeking damages that stem from Armouth's sale on credit of millions of dollars of clothing to Fallas's company, National Stores, Inc. ("National"). National is a debtor in an ongoing bankruptcy proceeding before the United States Bankruptcy Court for the District of Delaware, to which Armouth has filed proofs of claim as a creditor. Now before the Court is Fallas's motion to dismiss, transfer venue, or stay this litigation. For the reasons that follow, that motion is denied in its entirety.

**BACKGROUND**

      Except where otherwise noted, the following facts are drawn from Armouth's complaint, Dkt. 2-1, and are assumed to be true for purposes of resolving the motion. *See, e.g., Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). The Court also considers "matters of which judicial notice may be taken," namely documents filed in the ongoing bankruptcy proceeding involving Armouth and National. *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146

F.3d 66, 70 (2d Cir. 1998). ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

## I.      Factual Background

Plaintiff Armouth International, Inc. is a clothing wholesaler incorporated in the state of New York, with its principal place of business in New York.  Compl. ¶¶ 9-10.  Defendant Michael Fallas, a resident of California, was the "98% owner, Chairman of the Board and Vice President of National Stores, Inc., a discount retailer of clothing, toys, and household goods." *Id.*  ¶¶ 11-12.

Armouth began selling clothing to National in or around March 2017, and the relationship between the two entities "steadily began expanding" by late 2017. *Id.* ¶¶ 13, 19.  In March 2018, Fallas met at Armouth's headquarters with Charles Armouth, the company's Chief Executive Officer ("CEO"), to negotiate a deal to buy a large stock of clothing that comprised 24 million units with a resale value of approximately $9 million (the "Clothing Stock"). *See id.* ¶¶ 25-32.  When Mr. Armouth "sought specific assurances" about the stability of National and its ability to pay for the full volume of the Clothing Stock, Fallas represented that National was "healthy," that its financial status was solid, and that sales were up year after year at the company. *Id.* ¶¶ 33-36.  "Relying on [those] representations about National's finances, Armouth agreed to sell" nearly all of the Clothing Stock to National for approximately $9 million. *Id.* ¶ 40.  Under the terms of the agreement, "$3 million was due upon completion of all deliveries, with $500,000 due each following week until the full contract price was paid." *Id.* ¶ 41.

Armouth then began shipping the Clothing Stock to National and supplemented "an additional $3.5 million of goods" between April and June 2018. *Id.* ¶¶ 43-45.  Fallas represented on multiple occasions during that time that "National was performing well" and "in good financial health." *Id.*

¶¶ 50, 52.  On or about June 2017, National sent Armouth "a spreadsheet identifying over $29 million in retail (or $15 million in costs) in additional orders that National purportedly planned to place with Armouth from October 2018 to April 2019."  *Id.* ¶ 53.  Instead of making the required $3 million lump-sum payment for the Clothing Stock, however, "National made only a few small installment payments that were dwarfed by the total amount due and owing to Armouth."  *Id.* ¶¶ 55, 57.

In July 2018, National announced its intention to file for bankruptcy.  *Id.* ¶ 61.  Company representatives announced that National had been in financial distress since at least 2017.  *Id.* ¶ 63.  When Armouth demanded the return of the significant portion of unpaid goods that it maintains "were still in National's warehouses and under National's control,"  National refused to return them.  *Id.* ¶¶ 71-72.  Fallas represented that "the goods were subject to liens from National's lenders."  *Id.* ¶ 73.

## II.      Bankruptcy Court Procedural History

On August 6, 2018, National and several other affiliated companies filed for chapter 11 protection in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing cases that are jointly administered under the docket number 18-11801 (collectively, the "Bankruptcy Proceeding").  Compl. ¶ 74; *see* Mot. at 3.  On November 23, 2018, Armouth filed two proofs of claims against National and J&M Sales, Inc. for goods sold in an amount totaling $15,320,042.90.  *See* Mot., Ex. A at 2-8 ("Initial Proofs of Claim").  On February 4, 2019, the Bankruptcy Court converted the Bankruptcy Proceeding to a chapter 7 liquidation and appointed a trustee to administer the debtors' bankruptcy estates.  *See* Bankruptcy Proceeding, Dkt. 1262, 1296.  On March 28, 2019, Armouth filed renewed proofs of claim against National and J&M Sales, Inc for goods sold in the amount of $ 15,320,623.33.  *See* Mot., Ex. A at 9-13 ("Renewed Proofs of Claim").

On September 12, 2019, the trustee of the debtors' estates filed an adversary proceeding against Armouth in the Bankruptcy Court seeking an injunction to halt the instant litigation and a

declaratory judgment that it violates the bankruptcy automatic stay.  *See* No. 19-50362-JTD, Dkt. 1. The Bankruptcy Court granted a motion for a preliminary injunction on December 17, 2019.  *See id.,* Dkt. 22.  On September 18, 2020, the trustee moved the Bankruptcy Court to convert that preliminary injunction into a permanent injunction on the basis that the claims that Armouth brings against Fallas in this Court belong to the debtors' estates.  *See id.,* Dkt. 31.

In a December 23, 2020 bench ruling announcing its denial of the motion to permanently enjoin this litigation, the Bankruptcy Court concluded that the fraud claim asserted here is not property of the debtors' estate, nor is Armouth "attempting to pierce the debtors' corporate veil," because it has a legal right under New York law to pursue Fallas directly.  *See* Dkt. 59-1 at 28-29. According to the Bankruptcy Court, "[t]he New York action is Armouth's personal property even if the pursuit of it and any potential recovery affects the bankruptcy estate," *id.* at 30, and "anything that results in a recovery for Armouth in the New York action would result in a reduction of any claim that it might have against the estate and, therefore, there's no risk of double recovery here," *id.* at 31. The Bankruptcy Court further found issues of collateral estoppel to be "irrelevant because the debtor is not a party to the action in New York and he cannot be collaterally estopped based on anything that might happen in the New York action."  *Id.*  The Bankruptcy Court memorialized its decision in a January 8, 2021 order that lifted the preliminary injunction and directed Armouth to withdraw its claims for unjust enrichment and conversion in this Court, *see* No. 19-50362-JTD, Dkt. 50, which it did.

## III.    District Court Procedural History

Amidst the Bankruptcy Proceeding, on March 25, 2019, Armouth filed this action in New York County Supreme Court.  Within thirty days, Fallas removed the action to federal court on the basis of diversity jurisdiction.  Dkt. 2.  On May 8, 2019, Fallas filed the instant motion to dismiss,

transfer venue, or stay this litigation.  Dkt. 8.  The Court stayed the action on January 10, 2020 in light of the preliminary injunction issued by the Bankruptcy Court.  Dkt. 41.  On October 1, 2020, the Court ordered that the stay remain in place pending the Bankruptcy Court's resolution of the motion to permanently enjoin Armouth from pursuing this litigation.  Dkt. 58.  The stay remained in place until January 22, 2021, after the parties informed the Court of the Bankruptcy Court's January 8, 2021 order.  Dkt. 61.  On February 1, 2021, the parties stipulated to the dismissal without prejudice of Armouth's claims for unjust enrichment and conversion, as required by the Bankruptcy Court's order. Dkt. 63.

## LEGAL STANDARD

A court may transfer a civil action to any other district where the suit may have been initially brought "[f]or the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The party requesting a change of venue carries the "burden of making out a strong case for transfer."  *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (internal quotation marks omitted).  To decide whether transfer under § 1404(a) is warranted, courts undertake a two-step inquiry.  *See, e.g., Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017).  The Court determines "first, whether the action could have been brought in the transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion."  *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013) (internal quotation marks omitted).

In the bankruptcy context, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.  Before addressing the convenience of the parties or the interests of justice, the district court must find that the case arises under title 11, defined as "any matter under which a claim

is made under a provision of title 11." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 461-62 (S.D.N.Y. 2020) (internal quotation marks and alteration omitted).   In determining whether transfer is permitted, courts in this District also look to whether the action is a "core" or "non-core" bankruptcy proceeding.   *Id.* at 462.   A claim is non-core if it "does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction." *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y. 2012) (internal quotation marks omitted).   A proceeding's nature can be core "if either (1) the type of the proceeding is unique to or uniquely affected by the bankruptcy proceeding, or (2) the proceeding directly affects a core bankruptcy function." *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005) (internal quotation marks omitted).   "[T]he determinative issue is whether claims that appear to be based in state law are really an extension of the proceedings already before the bankruptcy court." *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010).   In any case, "once a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir. 1993).

Pursuant to the "first-filed rule," "[w]here there are two competing lawsuits, the first suit should have priority" in determining the proper venue.   *New York Marine*, 599 F.3d at 112 (internal quotation marks omitted).   Transfer to the first-filed jurisdiction, however, is inappropriate when "the balance of convenience favors the second-filed action," which is "determined by considering the same factors considered in connection with motions to transfer venue."   *Id.* (internal quotation marks omitted).

## DISCUSSION

As the Court agrees with the Bankruptcy Court's determination that the instant cause of action is independent from any proceeding in bankruptcy and constitutes the property of Armouth rather than the debtors' estate, Fallas's motion to dismiss, transfer, or stay this litigation is denied.

## I.      Transfer Would Be Improper Here

### A.      The First-Filed Rule Does Not Apply

Fallas first maintains that transfer is proper pursuant to the first-filed rule because this action is "entirely duplicative of claims that Armouth has asserted against [National] in the Bankruptcy [Proceeding]." Mot. at 4. Armouth responds that the differences in legal claims and parties between this common law action and the Bankruptcy Proceeding render the first-filed rule inapplicable. The Court agrees that the first-filed rule is inapplicable here.

The first-filed rule applies where "essentially the same lawsuit involving the same parties and the same issues" is filed in two different forums. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *overruled on other grounds, Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990). The parties and issues need not be identical, "but the claims and rights raised in the two actions must not differ substantially." *Wells Fargo Advisors, L.L.C. v. Tucker*, 195 F. Supp. 3d 543, 552 (S.D.N.Y. 2016), *aff'd sub nom. Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392 (2d Cir. 2018). The core question is whether "there are common violations of law alleged." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014); *see Santana v. Cavalry Portfolio Servs., LLC*, No. 19 CIV 3773 (PAE), 2019 WL 6173672, at *3 (S.D.N.Y. Nov. 19, 2019) (stating that application of the first-filed rule depends on "whether the lawsuits at issue assert the same rights, and seek relief based upon the same facts" (internal quotation marks omitted)). The purposes of the rule are to "'avoid duplication of judicial effort, avoid vexatious litigation in multiple forums, achieve

comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication.'" *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001) (quoting *Marshak v. Reed,* 13 F. App'x 19 (2d Cir. 2001)).

As an initial matter, Fallas does not cite any instance in which a court has deemed a common law action duplicative of a proof of claim in bankruptcy against a related party. The Court finds that the facts asserted here do not justify such a novel application of the rule.

Fallas maintains that Armouth's common law claims are, "for all intents and purposes, identical" to the claims that it asserts in the Bankruptcy Proceeding because they are based on the "same nucleus of operative facts," namely the contract between National and Armouth, seek the same amount of damages, and because Fallas was acting at all relevant times as the agent of National, who is a party to the bankruptcy proceeding. Mot. at 5. The Court is unpersuaded that these commonalities render the two actions duplicative. First, the mere overlap of operative facts does not trigger application of the first-filed rule. The instant action centers on the circumstances under which Fallas induced Armouth to sell millions of dollars of merchandise on credit. Those facts have no apparent relevance to the Bankruptcy Proceeding. Second, the tort claim against Fallas is legally distinct from Armouth's claim of "goods sold" in the Bankruptcy Proceeding against National. Third, although Armouth seeks damages in the same amount as it is owed as a creditor in the Bankruptcy Proceeding, those damages are sought here from a different party for a different purpose, as compensation for fraudulent inducement into an agreement rather than the money owed under a contract. Fourth, as Fallas is not a party to the Bankruptcy Proceeding, Armouth has no redress against him in the Bankruptcy Court. As recognized by the Bankruptcy Court, a decision in this action would have no preclusive effect on the proceedings before that court. Because the instant Complaint alleges fraud by non-debtor Fallas, the Court agrees that it is an "independent cause of action." *See* Dkt. 59-1 at

30 (noting the type of relief sought through the fraud claim is entirely distinct from claim in the bankruptcy proceeding and concerns a nondebtor). Under these circumstances, the possibility that Fallas will be indemnified by an entity that is party to the Bankruptcy Proceeding, *see* Mot. at 10-11, does not on its own create substantial similarity between the claims.

Because the "claims and rights raised in the two actions . . . differ substantially," the Court finds the first-filed rule inapplicable in this instance. *See Wells Fargo Advisors, L.L.C.*, 195 F. Supp. 3d at 552.

### B.     Transfer Is Not Proper Under § 1404(a)

The Court finds that transfer is likewise improper under § 1404(a). The Court assumes, without deciding, that Armouth could have filed this action in the District of Delaware. *See* 28 U.S.C. § 1334(b) (conferring jurisdiction to district courts on civil proceedings "related to a case under title 11"); *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 114 (2d Cir. 1992) (stating that litigation falls within the "related to" jurisdiction of the bankruptcy court when its "outcome might have any 'conceivable effect' on the bankrupt estate").

Fallas has nonetheless failed to carry his "burden of making out a strong case for transfer" with respect to the discretionary convenience factors. *New York Marine*, 599 F.3d at 114 (internal quotation marks omitted).

> Among the factors to be considered in determining whether to grant a motion to transfer venue "are, inter alia: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties."

*Id.* at 112 (quoting *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106-07 (2d Cir. 2006)). None of these factors favors transfer to the District of Delaware.

Fallas's arguments in favor of transfer rely heavily on the assumption that this action "is related to the Bankruptcy [Proceeding]" and that "the Bankruptcy Court would have jurisdiction to hear the matter." Mot. at 9. As explained above, however, the Court rejects those contentions. Fallas claims that any deference to Armouth's choice of forum is "effectively cancelled out" by the presumption that litigation should proceed in the court in which the Bankruptcy Proceeding is occurring, that "the Bankruptcy Court is not particularly inconvenient compared to this Court, being about 120 miles away," and that the debtors' trustee's possession of the debtors' documents makes Delaware the more convenient forum in that regard. Mot. at 8 (internal quotation marks omitted). These factors do not suffice to carry Fallas's burden of making a strong case for transfer.

On the contrary, the convenience factors weigh in favor of maintaining this action in the Southern District of New York. "'A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant.'" *Starr Indem. & Liab. Co. v. Brightstar Corp.,* 324 F. Supp. 3d 421, 433 (S.D.N.Y. 2018) (quoting *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)). "This is especially true where plaintiff's chosen forum is its principal place of business." *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 173 (S.D.N.Y. 2009). Armouth has chosen to litigate this claim in its home forum. The locus of operative facts and the convenience of the witnesses—which are typically regarded as the primary factors in the convenience determination, *see Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 396—similarly counsel against transfer. Armouth alleges that Fallas fraudulently induced it to enter a contract during a March 2018 meeting in New York. Compl. ¶¶ 32-37. Further meetings supporting those fraud allegations took place in California. *Id.* ¶¶ 48. The principal witnesses to that meeting are Armouth's CEO, who resides in New York, and Fallas himself,

who lives in California.  Fallas, by contrast, has not demonstrated that any of the other factors supports transfer to Delaware.

### C.      Transfer Is Not Warranted Under § 1412

The Court similarly concludes that Fallas has not met his burden under 28 U.S.C. § 1412 of establishing the propriety of transfer.  The claims in the Complaint do not arise under title 11 or constitute a "core" bankruptcy proceeding.  Common law fraud is not a cause of action that "depends on bankruptcy laws for its existence." *DeWitt Rehab.*, 464 B.R. at 591 (finding breach-of-contract action to be non-core although dispute was "directly related to the claim of a creditor" in the bankruptcy proceeding).  Nor are the claims here "really an extension of the proceedings already before the bankruptcy court." *See Baker*, 613 F.3d at 350 (holding that claim of substandard legal representation in bankruptcy proceedings was subject to the bankruptcy court's "arising in" jurisdiction despite being based in state law).  In contrast to *Baker*, Armouth's fraud claim—which sounds in state law and concerns conduct that occurred prior to the initiation of any bankruptcy proceedings—"would have [] existence outside of the bankruptcy." *Id.* at 351.  Accordingly, the Bankruptcy Court rightfully described that claim as an "independent cause of action" that is the "personal property" of Armouth, not the estate.  *See* Dkt. 59-1 at 30.  That Armouth's claim encompasses facts, parties, and legal violations that are independent of the claims pending in Bankruptcy Court bolsters the conclusion that it does not concern a "core" bankruptcy proceeding.

Even if the Court were to conclude that this action "arises under title 11" within the meaning of § 1412, however, it would still decline to exercise its discretion to transfer, for the reasons described above.  *See Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*, No. 15-CV-3474 SAS, 2015 WL 5257003, at \*7 (S.D.N.Y. Sept. 9, 2015) ("The standards used to determine transfer under section 1412 and 1404(a) are substantially similar.").

## II.    A Stay Is Not Warranted

Fallas further contends that the Court should exercise its "wide discretion to stay this case" pending the Bankruptcy Proceeding, citing 11 U.S.C. § 105 (describing power of bankruptcy court to issue any order necessary or appropriate to carry out provisions of title 11), 11 U.S.C. § 362 (providing for automatic bankruptcy stay), and Federal Rule of Civil Procedure 65 (regarding injunctions and restraining orders) as authorities.  Mot. at 16-20.  Specifically, Fallas argues that equitable relief is warranted given the likelihood of a successful liquidation in the Bankruptcy Proceeding, the irreparable harm that the debtors would suffer upon recovery by Armouth, and the balance of harms.  Armouth counters that the automatic bankruptcy stay does not protect Fallas because its claim is not estate property, and that he is not entitled to an injunction under § 105 or Fed R. Civ. P. 65.  The Court agrees that a stay or injunction is not warranted under any of the aforementioned authority.

First, the automatic bankruptcy stay does not apply to this action.  The Court of Appeals for the Second Circuit has made clear that  "[t]he court in which the litigation claimed to be stayed is pending has jurisdiction to determine . . . whether the proceeding pending before it is subject to the automatic stay."  *In re Baldwin-United Corp. Litig.,* 765 F.2d 343, 347 (2d Cir. 1985).  Pursuant to the United States Bankruptcy Code, the filing of a bankruptcy operates as an automatic stay against, as relevant here, the commencement or continuation of a judicial proceeding against the debtor or any act to obtain possession of property of the estate.  11 U.S.C. § 362(a).  Because Fallas is not a debtor in the Bankruptcy Proceeding, the first circumstance contemplated by the statute does not apply.  *See Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986).  ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.").  Nor does the second circumstance.  As the Bankruptcy Court rightly noted in denying

the trustee's permanent injunction, this fraud-based action concerns Armouth's personal property rather than the property of the estate.  *See* Dkt. 59-1 at 30.

Second, Fallas is not entitled to an injunction under § 105 of the Bankruptcy Code in this Court.  Fallas maintains that a stay "analogous to issuing a preliminary or temporary injunction" is warranted by that statutory authority, which provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a).  *See* Mot. at 16.  Although "a *bankruptcy* court has discretion to enjoin a civil proceeding against a non-debtor" under that section, *In re Calpine Corp.*, 365 B.R. 401, 409 (S.D.N.Y. 2007) (emphasis added), Fallas cites no authority in which a district court has issued such an injunction.  *See id.* (affirming injunction issued by bankruptcy court); *In re Chateaugay Corp., Reomar, Inc.,* 93 B.R. 26 (S.D.N.Y. 1988) (same); *In re United Health Care Org.*, 210 B.R. 228, 235 (S.D.N.Y. 1997) (denying exemption to injunction issued by bankruptcy court); *see also In re Lomas Fin. Corp.*, 932 F.2d 147, 148 (2d Cir. 1991) (evaluating propriety of preliminary injunction issued by a bankruptcy court staying a fraud and misrepresentation action against two corporate officers of debtor company).  In this case, the Bankruptcy Court has already declined to permanently enjoin this action, and this Court has already stayed this action for more than a year pending that decision.  It declines to further delay the adjudication of Armouth's claims.

Lastly, the Court disagrees that permitting this action to proceed would cause the debtors irreparable harm, or "immediate adverse economic consequences."  Mot. at 17-18.  The Bankruptcy Court found that a judgment in favor of Armouth here would not adversely affect the debtors in the manner envisioned by Fallas.  *See* Dkt 59-1 at 31 ("[A]nything that results in a recovery for Armouth in the New York action would result in a reduction of any claim that it might have against the estate

and, therefore, there's no risk of double recovery here."). The Court thus declines to issue an injunction under Fed. R. Civ. P. 65. In sum, a stay is not warranted in this case.

**III.    The Motion to Dismiss the Second and Third Causes of Action Is Moot**

In light of Armouth's voluntary dismissal of the second and third causes of action—for unjust enrichment and conversion, respectively, *see* Dkt. 61—Fallas's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied as moot.

**CONCLUSION**

For the foregoing reasons, Fallas's motion is DENIED. To the extent that the motion seeks dismissal of Counts Two and Three, it is DENIED as moot. The Clerk of Court is respectfully directed to terminate item number 8 on the docket. By no later than March 15, 2021, the parties shall submit a joint letter updating the Court on the status of this case, which includes a revised case management plan.

SO ORDERED.

Dated:     March 1, 2021
           New York, New York

_____
Ronnie Abrams
United States District Judge