UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

Armouth International Inc.,

        Plaintiff,

 -against-                                     19 civ. 3669 (CM)

Michael Fallas,

        Defendant.

---------------------------------------------------------------x

McMahon, J.:

    The court, for its decision on the parties' motions in limine:

**Plaintiff's Motions In Limine**

    *1. Motion to Exclude Expert Reports and Testimony Concerning Due Diligence and Reasonable Reliance (Dkt. #140)*

    This motion is DENIED.

    Plaintiff argues that Judge Abrams has already concluded that Armouth reasonably relied. I do not read her opinion as so holding, but just to make sure, I called Judge Abrams and put it to her. Unsurprisingly, she said that she had made no such determination, but rather had decided that only a jury could make the determination about whether Armouth had reasonably relied.

    There is a specific motion to exclude the testimony of one of the two experts, Jonathan Tibus, which is decided below.

    To the extent that this motion seeks to preclude the testimony of Steven Sass, it is denied. The arguments made at pages 3-5 of the moving brief go to the weight of the testimony, not to its admissibility.

    *2. Motion to Preclude Lay Witnesses From Giving Expert Testimony (Dkt. #141)*

    This motion is DENIED.

This strikes the court as a case in which expert testimony is largely, if not entirely, unnecessary. Mr. Fallas and his proposed witnesses are laymen who are participants in the garment industry. They have the necessary experience to testify about practices that are followed in that industry, and they do not have to be experts to do so. Pursuant to Fed. R. Ev. 701, lay witnesses may testify, even in the form of an opinion, if their testimony is rationally based on their perceptions, helpful to clearly understanding what the witness has to say or determining a fact in issue, and not based on scientific, technical or other specialized knowledge within the score of Rule 702. Of course, the lay witnesses (including Mr. Fallas) may only testify about the matters in suit: this transaction and any factual matters relevant to the reasonableness of reliance (the key issue in this case) that are known to the witnesses because they are percipient observers of the events in suit or the relationship between the parties. This necessarily includes any prior course of dealing between the parties.

3. *Motion to Exclude Lay Opinion of Sandy Menichelli (Dkt # 142)*

The motion is DENIED.

Menichelli was the Chief Financial Officer of National Stores. Her testimony is being offered as that of a percipient witness. Among the matters she has had an opportunity to observe are how other vendors who sold merchandise to National Stores conducted credit evaluations before extending credit. Her testimony about those incidents (those factual incidents) is relevant to the issue of the reasonableness of Levy's purported reliance on Fallas. Knowing what steps Menichelli observed other vendors take with respect to conducting analysis prior to extending credit may help the jury understand what sort of due diligence was viewed as reasonable in the industry. Again, her lay opinion testimony is admissible as long as it is rationally based on her perceptions, helpful to clearly understanding what she has to say or determining a fact in issue, and are based on her non-technical experience. Whether her lay opinions are the product of her knowledge of "customs and practices" in the industry or of her own experiences and observations will become apparent as she testifies.

4. *Motion to Exclude the Expert Testimony of Jonathan Tibus (Dkt. #143)*

The motion is GRANTED.

Tibus is specifically offered as a rebuttal expert to the testimony of Basil Imburglia. Counsel have confirmed that he was not disclosed as an affirmative expert, but as a rebuttal expert. (Dkt. #166). Therefore, his testimony must rebut the opinions offered by Basil Imburglia. To ascertain whether Tibus' testimony is proper rebuttal, I am working from the summary of rebuttal opinions in the Report of Mr. Tibus, which is found at Dkt. #143-3, and from the proposed testimony of Mr. Imburglia.

Imburglia will testify, on the basis of his analysis of National Stores' books and records, that National was insolvent as of March 19, 2018. The court is denying a motion to disallow that testimony (see *infra*.). The only possible rebuttal to that testimony would be testimony that National Stores was not in fact insolvent on that date. Tibus does not offer such testimony. Instead,

he opines that it is common for companies that are experiencing liquidity to continue doing business with their vendors, as National was during March 2018. That is not proper rebuttal; it does not rebut Imburglia's opinion.[1]

Moreover, the testimony Tibus proposes to give on this point is phrased in patently improper terms. Despite his qualifications, he could never testify about what the company and its financial advisors "believed" the best course of action would be (pp 6-7 of Report). Only witnesses from the company and its financial advisers can give such testimony.

Imburglia will also testify, based on his analysis of historic trends, that National Stores was in a severely distressed financial condition as of March 19, 2018. Again, the court is allowing that testimony to be offered (see *infra.*). Tibus' proposed rebuttal testimony – that National had experienced an improvement in sales and EBITDA and was taking steps with its lenders to address liquidity issues – is proper rebuttal. The problem is that there is no need for an expert to offer that testimony. National's own witnesses, including specifically Fallas, can and undoubtedly will testify about any improvement in National's sales and about the efforts it was undertaking with its lenders. In fact, only National witnesses can testify about those facts. The Tibus report suggests no reason why an expert should simply reinforce that evidence, especially since his regurgitation of facts that are properly testified to by Fallas and others is not the product of any specialized analysis or expertise. It simply lends the veneer of an "expert" to information that the jury will acquire from fact witnesses. Therefore, this testimony will also not be admitted.

As will be seen, Imburglia will not be permitted to testify that Fallas misrepresented National's financial condition to Armouth through inaccurate and misleading statements and omissions. Therefore, there is no need for any rebuttal to this testimony. Tibus' proposed testimony about typical standards of credit analysis and due diligence is not in any event rebuttal to testimony that Fallas made misrepresentations of fact; only testimony that he did not do so (which can only come from Fallas) is proper "rebuttal" testimony on that point.

Finally, Tibus' proposed testimony[2] at the section of his report denominated "Opinion 3" is not admissible. The proposed testimony outlined in this section does not conform to the proposed expert opinion summarized on page 3 of the report, which relates to industry practice about credit checking. Instead, it principally regurgitates evidence that will come in from other witnesses, in a manner that is properly the province of counsel during closing argument.

**Defendant's Motions In Limine**

*1. Motion to Preclude Certain Damages Evidence (Dkt. #128)*

This motion is DENIED.

---

[1] Ironically, had Tibus been disclosed as an affirmative expert he could likely have given such testimony. But he was only disclosed as a rebuttal expert.

[2] There is really no reason for unprofessional footnotes like the one at page 4 of the opposition brief filed by the Greenberg Traurig firm. Moreover, Defendant's counsel may wish to know that the court follows the old practice of not adding the extra "s" following the apostrophe when the word being turned into a possessive ends in an "s." For so the nuns taught me back in the 1950s.

If in fact Armouth is able to prove that Michael Fallas defrauded it into selling goods to National Stores – a big "if" – then the actual pecuniary loss that Armouth suffered as a result of the fraud is the amount it was supposed to receive but did not receive in exchange for the goods sold and delivered. Contrary to Fallas' argument, Armouth's actual pecuniary loss is not measured by what it paid to acquire the goods it sold to National Stores, which is $6.75 million. That transaction did not involve Fallas or National Stores; whatever amount Armouth paid to a third party for the goods is not damage incurred as a result of the fraud alleged in the complaint. Nor can Armouth's actual pecuniary loss exceed the amount that it was supposed to receive, but did not receive, from National Stores as a result of National Stores' breach of contract, which is $9 million. If Armouth was induced to enter into that contract by fraudulent misrepresentations, then the law is clear that it is entitled to the amount it lost by delivering goods for which it was not paid -- which is $9 million.

*2. Motion to Preclude Evidence of Purported Family Relationship (Dkt. No. 131)*

This motion is DENIED.

Judge Abrams' summary judgment decision makes it clear – and she has confirmed to me -- that she intended for a jury to decide whether some special relationship between the parties overrode the usual rule in a fraud case, which is that justifiable reliance is lacking where a sophisticated party entered into an arms-length transaction and could have protected itself through due diligence. The parties will introduce evidence about whatever relationship they do or do not have. Mr. Levy of Armouth can testify that he is distantly related to Fallas' wife. Of course, if that is all he testifies, then the jury will be told that it cannot consider that relationship as a factor mitigating normal commercial rules. Unless evidence demonstrates that there existed between Levy and Fallas a "strong, well founded history of family trust," the jury will be told that a distant familial (by marriage) relationship between Mr. Fallas and Mr,. Levy is insufficient, in and of itself, to warrant departure from the usual rule of *caveat emptor* when sophisticated parties enter into a business transaction.

It is, however, possible that Levy will testify about how often the two families interact; how well he knows his "cousin" and her husband, how many times they have celebrated the holidays together, gone on vacation together, attended important family celebrations together, were seated with one another. If he can introduce evidence tending to show that he enjoyed the kind of close and continuing familial relationship with the Fallases that would justify entering into a $9 million business transaction with Michael Fallas' company, National Stores, without conducting any due diligence, this issue can go to the jury. And of course, Mr. Fallas and his wife are free to testify to the contrary.

*3. Motion to Prelude Evidence About Religion (Dkt. #134)*

The motion is DENIED

Contrary to Fallas' argument, Fed. R. Ev. 610 is not implicated in this application. Armouth does not seek to introduce evidence that both Levy and Fallas were Sephardic Jews for the purpose of undermining Fallas' credibility/character for truthfulness. Rather he wants to introduce it so he can argue that his reliance on Fallas' representations was reasonable – that he would naturally believe a "member" of "his religious community."

There is no rule of which I am aware that offers an exemption to a sophisticated businessman from the rule of due diligence simply because he is doing business with a person who shares his religious beliefs. Nor has anyone called to my attention any evidence tending to show that, even if Mr. Levy held such to the view that all Sephardic Orthodox Jews could be trusted in business dealings to the point of excusing due diligence, Mr. Fallas did as well. But this appears to be another aspect of Judge Abrams' decision that the jury should decide whether there was some special relationship between Levy and Fallas that overrode usual rules of business caution. We shall see whether Mr. Levy is able to introduce concerning whether Mr. Fallas really was a member of the "SY" community, or that there is a commonly shared understanding among all Sephardic Orthodox Jews that they can be trusted, such that *de minimis* due diligence about a counterparty to a proposed business transaction can be viewed as reasonable. As I told the parties at our conference in July, I am not prepared to change Judge Abrams' rules simply because I am presiding at the trial.

4. *Motion to Preclude or Limit the Expert Testimony of Basil Imburgia (Dkt. #137)*

The motion is GRANTED IN PART AND DENIED IN PART

This is, in essence, a *Daubert* motion, although it is made *in limine* and not in reliance on *Daubert* standards and law. The moving papers do not challenge Imburgia's credentials as someone who has the ability to examine the books and financial records of a corporation and draw conclusions about the corporations' financial health. The question is what testimony he may offer at trial consistent with his expertise.

Imburgia may not testify that Fallas made "misrepresentations" about National Stores' finances. Only the jury will reach conclusion about that.

He may, however, testify that he examined the books and records of National Stores and found therein material that was inconsistent with representations that, per the testimony of Armouth's witnesses, were made to Levy by Fallas. In particular, he may testify about the results of the solvency test of National that he conducted; about the purported decline in National's sales data (apparently Levy will testify that Fallas represented that sales for the same period had increased); and about his findings concerning the stores in Puerto Rico. If the jury concludes that Imburgia's testimony is credible, and that Fallas made representations contrary to those findings, it will draw the appropriate conclusions. Imburgia may not draw those conclusions for the jury. He may simply and solely present his findings about National's "actual" financial condition.

Let me be quite clear: what Imburgia cannot do is draw for the jury the conclusion that Fallas "misrepresented" something as that term is understood at law. He may not testify to any aspect of Fallas' intent or motive to mislead. And above all, he may not regurgitate the testimony

of percipient witnesses about what transpired during the business negotiations between the two men. The jury will rely on the witnesses for that testimony. If Imburglia believes that there is an inconsistency between something that someone testified was said during negotiations and something that he found in National Stores' books and records, he may allude to the specific testimony that is allegedly contradicted by his findings. He will not be allowed to give summary testimony.

## CONCLUSION

The Clerk of Court is directed to remove the following motions from the court's list of open motions: Dkt. No. 128, 131, 134, 137, 140, 141, 142, 143.

Dated: September 27, 2023

_____
U.S.D.J.

BY ECF TO ALL COUNSEL